UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David J. McKinstry,

    Plaintiff,

v.                                                Civil Action No. 5:10-CV-319

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 4, 8)

    Plaintiff David McKinstry brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are McKinstry's motion to reverse the Commissioner's decision (Doc. 4), and the Commissioner's motion to affirm (Doc. 8). On October 19, 2011, a hearing was held on the motions.

    For the reasons stated below, I recommend denying McKinstry's motion to reverse, and granting the Commissioner's motion to affirm.

## Background

    McKinstry was forty-nine years old on the alleged disability onset date of August 20, 2003. (Administrative Record ("AR") 144, 181, 186.) He completed school through the twelfth grade plus one year at Champlain College, and has worked as a United States

postal worker for approximately one month, a manufacturer for IBM for approximately two years, and a commercial real estate broker for approximately seventeen years. (AR 37-40, 187, 193, 196-99, 842.) McKinstry has been married for roughly thirty years, has three biological children and two grandchildren, and has had multiple adopted and foster children over the years.[1] (AR 38-39, 42-43, 55, 282, 754, 841.) On August 21, 2003, he was involved in an automobile accident resulting in chronic lower back pain. (AR 43, 763.) Since that date, the record reflects that, despite having physical therapy, chiropractor visits, injections, and radiofrequency ablation, his pain persists. (*See, e.g.,* AR 257, 275, 282, 286, 287, 827, 841.) McKinstry also suffers hip, shoulder, leg, and knee pain; and he has obesity. (AR 213, 761, 826.)

In September 2008, McKinstry filed an application for disability insurance benefits with the protective filing date of August 25, 2008. (AR 144-59, 182.) Therein, he alleges that, starting on August 20, 2003, the date of his motor vehicle accident, he became unable to work as a result of pain in his lower back, left shoulder, and neck; diabetes; vertigo; and cardiac problems. (AR 186.) He further alleges that he is unable to stand or sit comfortably for more than fifteen-to-twenty minutes at a time, and that he has "a long history of not doing well since the auto accident . . . ." (*Id.*) McKinstry's application was denied initially and on reconsideration. (AR 76-92.)

On June 21, 2010, Administrative Law Judge ("ALJ") Debra Boudreau conducted a hearing on the application. (AR 31-72.) McKinstry appeared and testified, and was

---

[1] The record reveals that, in or around August 2008, McKinstry's parental rights were terminated with respect to three of his children. (AR 842.)

represented by counsel. (*Id.*) Additionally, McKinstry's wife, Jo McKinstry, and vocational expert ("VE") Maurice Demers testified at the hearing. (AR 55-72.) On July 9, 2010, the ALJ issued a decision finding that McKinstry was not disabled under the Social Security Act from his alleged onset date of August 20, 2003 through his date last insured ("DLI") of June 30, 2006. (AR 16-24.) Thereafter, the Decision Review Board affirmed the ALJ's decision, making it final. (AR 1-3.) Having exhausted his administrative remedies, McKinstry filed the Complaint in this action on December 20, 2010. (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the

performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Boudreau first determined that, although McKinstry "identifies himself as a realtor" and had made some earnings in that capacity in the years 2005 and 2007, he had not engaged in substantial gainful activity since his alleged onset date of August 20, 2003 through his DLI of June 30, 2006. (AR 18-19.) At step two, the ALJ found that McKinstry had the severe impairments of degenerative disc disease of the lumbar spine status post-motor vehicle accident, myofascial pain in the left shoulder, and obesity. (AR 19.) At step three, the ALJ found that none of McKinstry's impairments met or medically equaled a listed impairment. (AR 19-20.)

Next, the ALJ determined McKinstry's RFC, finding that he was able to occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry up to ten pounds, stand and/or walk with normal breaks for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (AR 20.) In addition, the ALJ found that McKinstry needed to be able to alternate between sitting and standing

4

every sixty minutes "for a brief stretch." (*Id.*) The ALJ further found that McKinstry was able to frequently climb ramps and stairs; occasionally climb ladders and scaffolds; frequently balance and kneel; and occasionally stoop, crouch, and crawl. (*Id.*) Based on this RFC, the ALJ concluded that McKinstry was capable of performing his past relevant work as a "machine feeder." (AR 22-23.) Alternatively, based on the VE's testimony, the ALJ determined that there were other jobs that existed in significant numbers in the national economy that McKinstry could have performed, including small products assembler, electronics worker, assembly machine tender/operator, parking lot attendant, and charity fundraiser. (AR 23-24.) The ALJ concluded that McKinstry had not been under a disability at any time from August 20, 2003, the alleged onset date, through the DLI of June 30, 2006. (AR 24.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

**I.     The ALJ Did Not Err in Failing to Discuss the June 2010 Opinion Letter of Physician's Assistant Richard Dooley.**

McKinstry contends the ALJ erred in failing to discuss the June 7, 2010 opinion letter of Physician's Assistant ("PA") Richard Dooley. The parties agree that, as a PA and not a licensed physician or psychologist, Dooley is not an "acceptable medical source," and thus the treating physician rule does not apply to his opinions. 20 C.F.R. § 416.913(a). Nonetheless, because Dooley is a treating medical source, his opinions are entitled to some consideration, at least to the extent that they may have had an effect on the outcome of the case. Social Security Ruling ("SSR") 06-03p specifies how ALJs should handle opinions from sources other than "acceptable medical sources," stating: "Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). The ruling then directs ALJs to use the same factors for the evaluation of opinions from "other sources" as are used to evaluate opinions from "acceptable medical sources," including treating physicians. *Id.* at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

After acknowledging that "there is a distinction between what an [ALJ] must *consider* and what [an ALJ] must *explain*," SSR 06-03p states that ALJs "generally should explain" the weight given to opinions from "other sources," "*or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent*

7

*reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case*." SSR 06-03p at *6 (emphasis added). In this case, the ALJ did not discuss the June 2010 opinion of PA Dooley. But this failure is not grounds for remand because, as explained below, (a) it is easy to "follow [her] reasoning" as to why she declined to afford significant weight thereto; and (b) had she explicitly considered Dooley's June 2010 opinion, it would not have "ha[d] an effect on the outcome of the case." *Id.*

In his June 2010 letter, Dooley opined that, *as of that date*, McKinstry was unable to sit for more than one hour, stand for long periods, and walk for more than one-quarter of a mile. (AR 827.) Dooley also noted, "McKinstry reports that he must lay down more than once in an eight-hour period for one to two hours." (*Id.*) Dooley further stated that these limitations were due to "chronic pain that started in October 2005." (*Id.*) In conclusion, Dooley opined as follows: "I cannot see [McKinstry] having been able to sustain full-time gainful employment dating back to October 2005 and continuing into the foreseeable future, even at a sedentary level." (*Id.*) Although the ALJ did not discuss this letter in her decision, she did discuss Dooley's October 2008 opinion letter. Therein, Dooley noted that McKinstry "has a long history going back several years of significant low back pain since a motor vehicle accident in 2003," and that McKinstry's symptoms "have gotten progressively worse." (AR 716.) Dooley further stated that, *as of the date of the letter*, McKinstry "reports that it is incredibly difficult for him to tolerate the pain, and he has difficulty with most activities including sitting, standing and walking." (*Id.*)

8

First, the ALJ was not required to give weight to Dooley's statement in the June 2010 letter that McKinstry could not sustain "full-time gainful employment dating back to October 2005" (AR 827), as the regulations "are abundantly clear that only the Commissioner may determine whether a claimant is disabled or unable to work." *Jones v. Astrue*, No. 09 Civ. 5577(DAB)(FM), 2011 WL 3423771, at *17 (S.D.N.Y. Jul. 15, 2011) (citing 20 C.F.R. § 404.1527(e); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). Second, other than Dooley's statement regarding McKinstry's inability to work starting in October 2005, the opinions contained in the October 2008 and June 2010 letters do not differ from each other, at least for purposes of analyzing McKinstry's limitations during the alleged disability period. Moreover, neither letter gives an opinion on McKinstry's functional limitations *during the alleged disability period*. Although the June 2010 letter states that McKinstry's pain originated in October 2005, it says nothing about the severity and debilitating effects thereof during that period. Essentially, in both letters, Dooley sets forth his opinion about McKinstry's functional limitations on the respective dates of their preparation (October 2008 and June 2010); opines that McKinstry's pain symptoms began during the alleged disability period; and acknowledges that the level of McKinstry's pain has worsened over the years (*see* AR 716 ("His symptoms have gotten progressively worse."); AR 827 ("[H]is pain has progressed to the point that I am prescribing him Vicodin 500 mg nightly and 72-hour 100 mg. Fentanyl Patch to help alleviate his pain.")). The Commissioner correctly points out that the Second Circuit has held that remand is unnecessary where, as here, an ALJ overlooks a treating provider's opinion which is "essentially duplicative of" an opinion considered by the ALJ, so long

9

as the overlooked opinion is not "significantly more favorable" to the claimant. *Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010). Here, for purposes of analyzing McKinstry's functional limitations during the relevant period, the October 2008 and June 2010 opinion letters are "essentially duplicative" of each other, and the more recent letter is not "significantly more favorable" to McKinstry. Therefore, the ALJ was not obligated to discuss both letters.

Third, and most importantly, the ALJ adequately and explicitly considered Dooley's October 2008 letter, and the ALJ's decision to afford limited weight thereto is supported by substantial evidence. Specifically, after describing the October 2008 letter, the ALJ accurately found that it "does not address [McKinstry's] level of functioning during the period through June 30, 2006, except in general terms and to say that [McKinstry's] back pain had worsened." (AR 22.) The ALJ also accurately determined that the letter is not "consistent with [Dooley's] own treatment notes," citing to Dooley's notes from the alleged disability period which recorded that McKinstry's treatment for back pain was "infrequent"; and that Dooley did not restrict McKinstry's activities, order tests, refer him to specialists, or prescribe stronger pain medications. (*Id.* (citing AR 633-799).)

In fact, Dooley's treatment records from the relevant period reveal a patient who was experiencing pain but nonetheless was able to engage in activities such as working as a realtor, driving his children around, and traveling to Aruba. They also reflect a patient who did not comply with prescribed treatment plans, particularly consistent physical therapy. The ALJ accurately summarized the record as follows:

10

> [T]he claimant was non-compliant with physical therapy in 2003 and was able to travel to Aruba late that year. Treatment notes show medical appointments were infrequent in 2003, and that the claimant did not complain of back pain in 2004. In October 2005, the claimant again complained of back pain and was referred to physical therapy. In late November 2005, he was sore from shoveling. Also, after he failed to show for physical therapy in December 2005, the claimant indicated that he was not doing well but that "things came up and been too busy for PT." In February 2006, the claimant stated that he spent "significant time" driving his four daughters to their activities, some of whom were foster children. . . . April 2006 physical therapy notes indicate that the claimant was progressing slowly because his commitment to therapy was secondary to family commitments. In June 2006 the claimant had been approved to adopt; at that time, he requested an orthopedic referral for hip and shoulder pain and said that intermittent physical therapy had not helped. Pain medication was not listed or prescribed. Additionally, through the date last insured, the claimant continued to engage in and hold himself out as working in real estate.

(AR 21 (internal citations omitted) (citing AR 256-57, 282-83, 716-99); *see also* AR 281, 287, 755-60.) The ALJ also accurately noted that McKinstry "described using a cane in 2008" but not prior to the DLI (June 30, 2006); did not receive injections for back pain through the DLI; did not have a magnetic resonance imaging ("MRI") or x-ray performed before the DLI; did not complain of or require treatment for pain during the year 2004; was prescribed only "conservative and limited" treatment before the DLI; was not referred to a specialist until June 2006; and was not advised to abstain from activities or stop working before the DLI. (AR 21-22 (citing to the record); *see also* AR 286, 500, 746-48.)

It was proper for the ALJ to find that McKinstry's poor compliance with physical therapy was inconsistent with his allegations of severe functional limitations during the alleged disability period. *See* 20 C.F.R. § 404.1530(b) ("[i]f you do not follow the

11

prescribed treatment without a good reason, we will not find you disabled"); *Mezzacappa v. Astrue*, 749 F. Supp. 2d 192, 209 n.14 (S.D.N.Y. 2010) ("in order to be entitled to [disability] benefits . . ., the claimant is required to follow all prescribed treatment if such treatment can restore his or her ability to work") (quotation marks omitted). It was also proper for the ALJ to note that McKinstry continued to work as a real estate agent during the alleged disability period, and the record supports this determination (*see* AR 281, 291, 435, 586, 701, 703, 754). Even if such work was only on a part-time basis, the fact that McKinstry was able to do any work at all was a factor for the ALJ to consider. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Apfel*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled.").

Finally, it was proper for the ALJ to consider McKinstry's failure to report back pain at medical visits during the alleged disability period. *See, e.g., Howell v. Comm'r of Soc. Sec.*, 349 F. App'x 181, 185 (9th Cir. 2009) (where, in contrast to her claims of ongoing, disabling symptoms, claimant "frequently made no complaints about any particular pains or impairments to her physicians," ALJ did not err in rejecting claimant's testimony); *Rosario v. Chater*, No. 95 Civ. 10509 (LBS), 1997 WL 167044, at *4 (S.D.N.Y. Apr. 8, 1997) (sustaining ALJ's credibility determination in part because "several treatment reports indicated that [the claimant] made no complaints of pain"). Also noteworthy, the ALJ accurately and properly considered Dooley's reporting of daily activities in 2008, including using a riding lawn mower for short periods of time, washing

12

dishes, loading the dishwasher in phases, doing limited driving, doing light grocery shopping every two weeks with his wife, paying bills, handling finances, visiting family members, and attending church.  (AR 21 (citing AR 204-11).)  *See Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414 (FJS/RFT), 2008 WL 2157129, at *11 (N.D.N.Y. Jan. 31, 2008) ("In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including. . . [[t]he claimant's] daily activities.") (citing 20 C.F.R. § 1529(c)(3)(i)).

McKinstry argues that the ALJ should have given more consideration to certain objective medical evidence, including the results of a July 18, 2006 electromyogram ("EMG") and an August 10, 2006 MRI, which McKinstry claims support Dooley's October 2008 and June 2010 opinion letters as well as the testimony of McKinstry and his wife regarding McKinstry's pain levels and functional limitations.  (Doc. 4 at 10-12.)  But the ALJ did in fact explicitly reference the July 2006 EMG.  (AR 22.)  And more importantly, the record reveals that the EMG results were merely "[s]uggestive of a *mild* axonal polyneuropathy" and "[p]robable *mild*, old or chronic and indolent right L4 radiculopathy" (AR 501 (emphasis added)), while the August 2006 MRI results revealed merely "L4-5 left paracentral disc protrusion with *mild* narrowing of the left lateral recess" (AR 657 (emphasis added)).  This evidence of "mild" impairment, dated after the insured period (albeit only days after), is not sufficient to override the other evidence, discussed above and in the ALJ's decision, which supports the ALJ's decision.

In sum, substantial evidence supports both the ALJ's explicit decision to afford limited weight to Dooley's October 2008 opinion and the ALJ's implicit decision to

afford limited weight to Dooley's June 2010 opinion.  Therefore, the ALJ's failure to discuss the June 2010 opinion is not grounds for remand.

II.     **Substantial Evidence Supports the ALJ's Finding that McKinstry's Allegations regarding His Limitations Were Based on His Current Condition and Not on His Condition during the Alleged Disability Period.**

McKinstry next argues that the ALJ's determination that his allegations of disabling pain are based on his present condition is not supported by the record.  This argument is based on the ALJ's statement in her decision that, "like her husband['s], [Jo McKinstry's] testimony appears to be based on [McKinstry's] current limitations[,] and not all of the limitations she described . . . are supported by the medical evidence for the period prior to the [DLI]." (AR 22.)  McKinstry states: "It is . . . totally unreasonable for the ALJ to state without any supporting medical evidence that [McKinstry and his wife] were describing . . . McKinstry's *present* condition, as opposed to his condition before his [DLI]." (Doc. 4 at 13.)  The record itself refutes this argument, however, clearly demonstrating that, at least in most instances, McKinstry and his wife described those of McKinstry's limitations which existed years after the DLI rather than those existing during the alleged disability period.  (*But see* AR 58, where Jo McKinstry responded in the affirmative to counsel's inquiry regarding whether her testimony about McKinstry's limitations referred to McKinstry's condition both on the date of the hearing and before June 2006.)

For example, at the administrative hearing, which took place in June 2010, approximately four years after the DLI, Jo McKinstry testified as follows, notably using the present tense almost exclusively (and using the past tense only to indicate that

14

McKinstry was less severely limited in earlier years):

- "We *can't* do just walks down the road . . . . We used to go biking. We *can't* bike because it *hurts* his back. . . . We did walk a while. He could walk longer. And *now* . . ., he *walks* even less due to back pain and shortness of breath. (AR 56-57 (emphasis added).)

- "[W]e *can't* even hunt anymore . . . ." (AR 57 (emphasis added).)

- "Dave loves to go to movies. We attempted to go to a movie *just recently* [and] he had to get up a couple of times. . . . And he *does leave* the movies a couple of times, throughout. We *can't* really go to the movies." (*Id.* (emphasis added).)

- "When we *go* out to eat, we . . . *can't* sit and enjoy an hour or two meal because either the chair *is* uncomfortable [and] [h]e *has to get up* [or] *[h]e's pacing* around. . . . *He's* not comfortable sitting." (*Id.* (emphasis added).)

- "He *can't* even drive me to work anymore . . . . And he used to do it for me." (AR 58 (emphasis added).)

- "[H]e used to do the vacuuming . . . he kept the house up. He used to do the laundry and everything. He *can't* carry the basket of clothes up the stairs." (*Id.* (emphasis added).)

- "[H]e *can't* get any help . . . to improve this pain that he's *now suffering* with." (AR 59 (emphasis added).)

- "Since '05 to '06 [the pain] *[has] been worsening*." (*Id.* (emphasis added).)

- "[H]is back pain has put his heart at risk and *now* his lungs. So *he's* on Cumadin continuously." (AR 60 (emphasis added).)

15

- "He *hasn't been* sleeping that well." (*Id.* (emphasis added).)
- "[Before the DLI,] [w]e would have maybe one [bad night] a month. . . . And then it just *keeps increasing*." (*Id.* (emphasis added).)

McKinstry also used the present tense when describing his functional abilities in his Function Report dated October 17, 2008 (AR 204-11), indicating that his statements therein reflected what he was able to do on that date, over two years after the DLI, rather than during the alleged disability period. (*See, e.g.,* AR 204 ("I *don't* do much . . . because I have trouble sleeping due to back pain."), AR 207 ("I *can't* do some household and yard work as it's to[o] painful.") (emphases added).) Moreover, at the June 2010 administrative hearing, although McKinstry's testimony about his limitations and daily activities sometimes referenced (through his attorney's direct questioning) the alleged disability period (*see, e.g.,* AR 46-48), he tended to switch to the present tense indiscriminately (*see, e.g.,* AR 49 ("[I] *get* shortness of breath. . . . I *can't* really carry or lift anything."), AR 53 ("I *can't* just sit in an area for two hours or an hour. . . . Walking . . . is short periods of walking. And then that usually *knocks* me out for the day.") (emphases added)). Furthermore, McKinstry was unable to identify with any degree of specificity when his alleged daily need to lay on the floor for up to two hours at a time arose, vaguely stating, "I think probably [prior to June 2006] I'd still be laying down on the floor quite a bit. But I think it got worse as we were going, as this progressed . . . ." (AR 48.) The Commissioner is correct in stating that the ALJ was not obliged to accept McKinstry's imprecise, subjective recollections of his limitations several years prior to the DLI. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) ("The ALJ has

16

discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.").

Thus, the ALJ did not err in finding that McKinstry's and his wife's testimony regarding McKinstry's limitations was largely based on McKinstry's condition at the time of the administrative hearing and not during the alleged disability period. Additionally, the ALJ properly supported her RFC assessment by specifically referencing other substantial evidence, including: (a) contemporaneous medical treatment notes demonstrating that, prior to the DLI, treatment was conservative and limited; on at least a few occasions, McKinstry denied having any back pain; McKinstry did not fully comply with his prescribed physical therapy regimen; and McKinstry had a fairly active lifestyle working in some limited capacity as a realtor while also caring for his adopted or foster children (*see, e.g.,* AR 256-57, 272, 281, 283, 286-87, 291, 435, 500, 586, 701, 703, 747, 752, 754, 760); and (b) reports from state agency medical consultants opining that McKinstry was capable of performing a reduced range of light work during the alleged disability period (*see* AR 803-16).

### III.     The ALJ Did Not Err in Noting that McKinstry Worked in Real Estate during the Relevant Period.

Finally, McKinstry contends that the record does not support the ALJ's determination that because he was working as a realtor, he was not disabled.  (*See* Doc. 4 at 13.)  But the ALJ did not make this determination.  Rather, she merely noted in her decision that McKinstry "continued to engage in and hold himself out as working in real

17

estate" during the alleged disability period. (AR 21.) It cannot be said that the ALJ's decision relies on a determination that McKinstry was working as a realtor; the ALJ simply considered McKinstry's demonstrated ability to work as a realtor as one factor (among others) which tended to demonstrate that his functional limitations were not as restricted as he now asserts they were during the alleged disability period. As explained above, it was proper for the ALJ to note that McKinstry continued to work as a real estate agent during the alleged disability period. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Moreover, the record supports this finding. (*See* AR 281, 291, 435, 586, 701, 703, 754.) For example, treatment notes from May 2005 state that McKinstry "continues to work as a realtor." (AR 754.) And in February 2006, physical therapist Michelle Rosen stated: "[McKinstry works in real estate . . . ." (AR 282.) In November 2006, Rosen stated: "[McKinstry] is a realtor." (AR 272.)

## Conclusion

As discussed above, I find that ALJ Boudreau conducted a correct analysis of McKinstry's claim, and cited substantial evidence in support of her findings. Accordingly, I recommend that McKinstry's motion (Doc. 4) be DENIED, and the Commissioner's motion (Doc. 8) be GRANTED.

Dated at Burlington, in the District of Vermont, this 24th day of October, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).