U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 FEB 23 PM 5:08

CLERK
BY  PM
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DAVID J. MCKINSTRY,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

Case No. 5:10-cv-319

**OPINION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND
AFFIRMING COMMISSIONER'S FINAL DECISION**
(Docs. 4, 8, 17)

This matter came before the court for oral argument on January 5, 2012, on the Objection of Plaintiff David J. McKinstry (Doc. 18) to the Magistrate Judge's Report and Recommendation (the "R & R") filed on October 24, 2011 (Doc. 17). In the R & R, the Magistrate Judge recommended denying Plaintiff's motion to reverse the decision of Michael J. Astrue, Commissioner of Social Security ("Commissioner") (Doc. 4) and granting the Commissioner's motion to affirm the same (Doc. 8).

Plaintiff objects to the R & R, contending that the Magistrate Judge (1) erroneously analyzed physician's assistant Richard M. Dooley's June 7, 2010 opinion letter (the "June 2010 opinion letter"); (2) improperly concluded that Plaintiff's testimony regarding his limitations was based on his present condition, rather than upon his condition during the relevant period; and (3) erroneously found that Plaintiff's work as a realtor supported a conclusion that he was not disabled.

Plaintiff is represented by Beth A. Danon, Esq. The Commissioner is represented by AUSA Kevin J. Doyle and Special AUSA Susan B. Donahue.

## I. Factual and Procedural Background.

The parties do not dispute the Magistrate Judge's recitation of the operative facts. The court thus adopts them verbatim:

> McKinstry was forty-nine years old on the alleged disability onset date of August 20, 2003. (Administrative Record ("AR") 144, 181, 186.) He completed school through the twelfth grade plus one year at Champlain College, and has worked as a United States postal worker for approximately one month, a manufacturer for IBM for approximately two years, and a commercial real estate broker for approximately seventeen years. (AR 37-40, 187, 193, 196-99, 842.) McKinstry has been married for roughly thirty years, has three biological children and two grandchildren, and has had multiple adopted and foster children over the years.[1] (AR 38-39, 42-43, 55, 282, 754, 841.) On August 21, 2003, he was involved in an automobile accident resulting in chronic lower back pain. (AR 43, 763.) Since that date, the record reflects that, despite having physical therapy, chiropractor visits, injections, and radiofrequency ablation, his pain persists. (*See, e.g.,* AR 257, 275, 282, 286, 287, 827, 841.) McKinstry also suffers hip, shoulder, leg, and knee pain; and he has obesity. (AR 213, 761, 826.)
>
> In September 2008, McKinstry filed an application for disability insurance benefits with the protective filing date of August 25, 2008. (AR 144-59, 182.) Therein, he alleges that, starting on August 20, 2003, the date of his motor vehicle accident, he became unable to work as a result of pain in his lower back, left shoulder, and neck; diabetes; vertigo; and cardiac problems. (AR 186.) He further alleges that he is unable to stand or sit comfortably for more than fifteen-to-twenty minutes at a time, and that he has "a long history of not doing well since the auto accident . . . ." (*Id.*) McKinstry's application was denied initially and on reconsideration. (AR 76-92.)

(Doc. 17 at 1-2.)

On June 21, 2010, Administrative Law Judge ("ALJ") Debra Boudreau conducted a hearing on Plaintiff's application by videoconference. Plaintiff appeared and testified, and was represented by counsel. Additionally, Plaintiff's wife, Jo McKinstry, and vocational expert ("VE") Maurice Demers testified at the hearing. On July 9, 2010, the

---

[1] The record reveals that, in or around August 2008, McKinstry's parental rights were terminated with respect to three of his children. (AR 842.)

2

ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged onset date of August 20, 2003 through his date last insured ("DLI") of June 30, 2006. Thereafter, the Decision Review Board affirmed the ALJ's decision, making it final. Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on December 20, 2010.

## II. The ALJ's Decision.

The ALJ applied the five-step analysis employed by the Commissioner to determine whether a claimant is disabled under the Social Security Act.[2] At step one, the ALJ found that although Plaintiff identifies himself as a realtor and had some earnings in that capacity in 2005 and 2007, he has not engaged in substantial gainful activity since his alleged onset date through his DLI in June 2006. At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine status post motor vehicle accident, myofascial pain left shoulder, and obesity." (AR 19.) The ALJ noted that the record also contained evidence of vertigo, diabetes mellitus,

---

[2] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir. 1984).
>
> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's [residual functional capacity] precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart],* 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue,* 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

3

obstructive sleep apnea, coronary artery disease, and pulmonary emboli, but she determined that none of those medically determinable impairments were severe. At step three, the ALJ further determined that none of these impairments or combination of impairments met or medically equaled an impairment in the Listings.

At step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). She found that Plaintiff

> had the residual functional capacity to occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds, to stand and/or walk with normal breaks for about six hours in an eight-hour workday; and to sit for about six hours in an eight-hour workday. The claimant had to be allowed to alternate between sitting and standing every 60 minutes for a brief stretch. He was able to frequently climb ramps and stairs but only occasionally climb ladders and scaffolds. Finally, the claimant was able to frequently balance and kneel but only occasionally stoop, crouch, and crawl.

(AR 20.)

As part of her determination of Plaintiff's RFC, the ALJ assessed Plaintiff's credibility. The ALJ noted that Plaintiff's disability claim for the time period between August 20, 2003, and the DLI is "based primarily on back and joint pain that limit his ability to carry, lift, walk up stairs, sit, and stand." (AR 20.) The ALJ observed that Plaintiff's statements were not entirely consistent with other evidence in the record. During the relevant time period, Plaintiff took a trip to Aruba, worked in a limited capacity as a realtor, and spent significant time driving his daughters to various activities. Plaintiff was also not fully compliant with his physical therapy regimen. The ALJ found this evidence inconsistent with the claimed disability. The ALJ further found that the testimony of both Plaintiff and his wife at the hearing was directed primarily to Plaintiff's present condition and not to the time period in question.

As for the objective medical evidence, the ALJ noted that Plaintiff made no complaints of pain nor sought treatment in 2004 and was not referred to a specialist until June 2006. In addition, he was not advised to abstain from any activities or stop working during the relevant time period. Plaintiff's magnetic resonance imagining ("MRI"), x-

4

ray, and electromyogram ("EMG") records, which were primarily conducted after the DLI, revealed only mild conditions.

In evaluating Plaintiff's RFC, the ALJ also considered an October 2008 opinion letter of Mr. Dooley (the "October 2008 letter"). Observing that the October 2008 letter failed to address Plaintiff's functioning during the relevant period and specifically noting that it was inconsistent with Mr. Dooley's own treatment notes,[3] the ALJ accorded it little weight. The ALJ did not mention the June 2010 opinion letter of Mr. Dooley. Regarding the opinions of the non-examining state agency medical consultants' opinions, the ALJ gave them "significant weight," finding that they were supported by the medical evidence in the record. In determining Plaintiff's RFC, the ALJ concluded that although Plaintiff's medically determinable conditions could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.

At step five of her analysis, the ALJ found that Plaintiff was capable of performing past relevant work as a machine feeder, a job he had held at IBM. She determined that although this job is listed as a medium extertional level, based on Plaintiff's testimony, his particular job was performed at a light exertional level. She concluded that this work did not require performance of activities outside Plaintiff's RFC. In the alternative, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, based on testimony from the VE that Plaintiff would have been able to work in the following occupations during the relevant time period: small products assembler, electronics worker, assembly machine tender/operator, parking lot attendant, and fundraiser for charity.

---

[3] The October 2008 letter, which was based largely upon Plaintiff's self-report, states in part: "The patient reports that it is incredibly difficult for him to tolerate pain, and he has difficulty with most activities including sitting, standing, and walking. He absolute cannot do any heavy lifting." (AR 716.) However, the ALJ observed that Mr. Dooley's notes "show only infrequent treatment for back pain until October 2005" and "Mr. Dooley did not restrict the claimant's activities, order tests including MRIs or refer him to specialists, or prescribe stronger pain medications such as narcotics." (AR 22.)

5

Based on the preceding analysis, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the DLI.

### III. The Magistrate Judge's R & R.

In the R & R, the Magistrate Judge recommended that the court find that the ALJ did not err in her failure to address Mr. Dooley's June 2010 opinion letter. The Magistrate Judge further recommended that the court find that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding his limitations was based on his current condition, not on his condition during the relevant period. Finally, the Magistrate Judge recommended that the court find that the ALJ did not err in noting that Plaintiff worked in real estate during the relevant period. For these reasons, the Magistrate Judge recommended that Plaintiff's motion to reverse and remand be denied and that the Commissioner's motion to affirm be granted.

### IV. Conclusions of Law and Analysis.

#### A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

6

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g).

It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir. 1984). Nevertheless, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

**B.    Whether the ALJ Erred in Failing to Consider the June 2010 Opinion Letter of Mr. Dooley.**

The Magistrate Judge found the ALJ's failure to explicitly discuss the June 2010 opinion letter from Mr. Dooley was not reversible error for two reasons. First, the Magistrate Judge concluded that it was "easy to follow" the ALJ's reasoning as to why she declined to give significant weight to the June 2010 opinion letter based on the reasoning applied to the October 2008 letter. (Doc. 17 at 8.) Second, the Magistrate Judge concluded that even if the ALJ failed to address the June 2010 opinion letter, any error was harmless.

As Plaintiff correctly points out, the court cannot analyze the ALJ's reasoning regarding the June 2010 opinion letter because it is not mentioned in her decision. The court thus agrees that the Magistrate Judge speculated regarding why the ALJ failed to address the June 2010 opinion letter and further speculated regarding how she would have addressed it had she chosen to do so. A court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

been thinking."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this *post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). Accordingly, the court declines to adopt the portion of the R & R that speculated regarding the ALJ's reasoning.

The court next reviews the ALJ's failure to address the June 2010 opinion letter to determine first, whether it was error, and second, whether any error was harmless. As a physician's assistant, Mr. Dooley is an "other source" for purposes of this analysis. *See* 20 C.F.R. § 404.1513 (listing physician's assistants as example of other sources). Under Social Security Ruling 06-03p, the ALJ's decision "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). In addition, under SSR 06-03p, "there is a distinction between what an [ALJ] must consider and what [an ALJ] must explain." *Id.* Nonetheless, the applicable regulations require that the ALJ must "consider all evidence" in the case record. 20 C.F.R. § 404.1520(a)(3).

As the Commissioner points out, the ALJ stated she reached her conclusion "[a]fter careful consideration of all the evidence" in the record (AR 17). The record included the June 2010 opinion letter; indeed, Plaintiff's counsel specifically drew the ALJ's attention to it.[4] The court concludes that the ALJ's statement was sufficient to establish that the ALJ considered the June 2010 opinion letter, even though she did not address it. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"); *Burnett v. Bowen*, 830 F.2d 731, 733 (7th Cir. 1987) (concluding that ALJ fulfilled obligation to consider new evidence in the record because he stated that "he considered the entire

---

[4] At the hearing before the ALJ, Plaintiff's counsel specifically mentioned the June 2010 opinion letter to the ALJ, stating, "The summary I just gave is pretty much laid out in a June 7th, 2010 letter from Mr. McKinstry's physician's assistant[.]" (AR 37.)

8

record.") (emphasis omitted); *Hall v. Barnhart*, 31 Fed. App'x 839, *1 (5th Cir. 2002) (rejecting argument that ALJ selectively considered evidence and stating that "[t]he ALJ is not required to recite every scrap of evidence which the claimant considers helpful to her case."); *Buchan v. Astrue*, 2011 WL 3714472, at *5 (D. Kan. Aug. 24, 2011) ("It is a practical impossibility for an ALJ's decision to discuss, summarize, or even cite all of the evidence in a record[.] Therefore, . . . the decision must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to cite *all* of the evidence supporting each of his findings.").

The court next considers whether the ALJ erred in failing to specifically address the "other source" information contained in the June 2010 opinion letter. As noted, SSR 06-03p states that the ALJ "generally should explain" the analysis of other source opinions. Here, the ALJ's decision is silent as to the weight, if any, she accorded to the June 2010 opinion letter. This was error.

Failure to address evidence is harmless error if consideration of the evidence would not have changed the ALJ's ultimate conclusion. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where "we find no reasonable likelihood that her consideration of the same doctor's 2002 report would have changed the ALJ's determination that Petitioner was not disabled during the closed period."); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

For several reasons, the court concludes that an analysis by the ALJ of the June 2010 opinion letter would not have changed the outcome of the case.[5] First, the June

---

[5] Although *Thibault v. Astrue*, 2011 WL 5024460 (D. Vt. Oct. 20, 2011), remanded a similar issue regarding an ALJ's failure to address "other source" evidence, it is distinguishable from this case. In *Thibault*, the court remanded for the ALJ to consider the probative value of the lay witness's testimony as part of a remand of another issue. *Id.* at *6. However, in *Thibault* the ALJ ignored all the testimony of a lay witness, but here the ALJ here addressed some evidence from Mr. Dooley. Additionally, in *Thibault* the court did not engage in a harmless error analysis, because the court ordered remand on other grounds. The court instead acknowledged that "an

9

2010 opinion letter provides scant information regarding Plaintiff's limitations during the relevant period. While the letter states that Plaintiff has had "chronic pain that started in October 2005" (AR 827), it does not provide specific information about the severity or debilitating effects of that pain during the relevant period.

Second, the June 2010 opinion letter recites Plaintiff's medical history but sets forth Plaintiff's limitations using the present tense.[6] The letter does not explain whether those current limitations are reflective of Plaintiff's limitations during the relevant period.

Third, the June 2010 opinion letter was not consistent with Mr. Dooley's own treatment notes. As the ALJ observed in addressing the October 2008 letter, the "records show only infrequent treatment for back pain until October 2005." (AR 22.) The ALJ also noted that during the relevant period Mr. Dooley did not restrict Plaintiff's activities, order tests, refer him to specialists, or prescribe stronger pain medication. Mr. Dooley's treatment notes from the relevant period show that Plaintiff was experiencing pain but could nonetheless work as a realtor, drive his children to and from activities, travel to Aruba, and that Plaintiff did not comply with his treatment plans.[7]

Finally, although Plaintiff argues that the ALJ's failure to address the June 2010 opinion letter was exacerbated by the ALJ's failure to adequately consider evidence that supported the conclusions found therein, this evidence consists of an EMG from July 18, 2006 and an MRI from August 10, 2006. Both of these tests were conducted after the

---

ALJ's failure to even mention lay witness testimony . . . may constitute harmless error in circumstances not present here." *Id.* at *6 n.7.

[6] The June 2010 opinion letter states in relevant part: "[Plaintiff] cannot sit for more than one hour without experiencing discomfort and he must move about. He cannot stand for long periods either, without experiencing severe discomfort. He can walk about one-quarter of a mile before he must rest. [Plaintiff] reports that he must lay down more than once in an eight-hour period for one to two hours." (AR 827.)

[7] In addition, the June 2010 opinion letter contains Mr. Dooley's opinion about Plaintiff's inability to work. This part of the letter is entitled to no weight under the applicable regulations because only the Commissioner may determine whether a claimant is able or unable to work. *See Jones v. Astrue*, 2011 WL 3423771, at *17 (S.D.N.Y. Jul. 15, 2011) (citing 20 C.F.R. § 404.1527(e)).

10

DLI. The ALJ explicitly addressed the EMG. *See* AR 22 ("A July 2006 EMG suggested mild axonal polyneuropathy and probable mild, old, or chronic and indolent right L4 radiculopathy."). The ALJ did not address the August 2006 MRI, but the record reveals that the results of that test were merely "L4-5 left paracentral disc protrusion with mild narrowing of the left lateral recess." (AR 657.) This evidence of mild impairment, dated over a month after the relevant time period, is not significantly more helpful to Plaintiff than other evidence in the record. *See Zabala*, 595 F.3d at 410 (finding remand unnecessary "[b]ecause the report that the ALJ overlooked was not significantly more favorable to Petitioner").

For the foregoing reasons, the court concludes that the ALJ's failure to address or explain the weight, if any, accorded to the June 2010 opinion letter constitutes harmless error and does not necessitate remand. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting request to reverse ALJ's decision and noting that "we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). The court thus ADOPTS the Magistrate Judge's conclusion as to the harmless error analysis but REJECTS the Magistrate Judge's conclusion that it was "easy to follow" the ALJ's analysis as to the June 2010 opinion letter.

### C. Whether Substantial Evidence Supports the ALJ's Finding That Plaintiff's Testimony Regarding His Limitations Was Based on His Current Condition.

Plaintiff objects to both the Magistrate Judge's and the ALJ's observation that Plaintiff and his wife testified primarily about Plaintiff's current condition. As Plaintiff points out, his counsel specifically asked both him and his wife if testimony regarding present limitations also pertained to limitations during the relevant period, to which they both answered in the affirmative.

The Commissioner counters that both the Magistrate Judge and the ALJ accurately characterized the record. For example, Plaintiff often testified using the present tense.[8]

---

[8] *See, e.g.,* AR 38 (testifying that his previous real estate work "required you going out in the field or climbing a mountain or doing something to set these things up, and I [can] no longer do

11

Similarly, when filling out a Function Report in October 2008, Plaintiff used the present tense to describe his limitations, even though the Function Report was completed over two years after the DLI.[9] In her testimony Ms. McKinstry also frequently used the present tense in describing limitations on Plaintiff's conduct.[10] In addition, even when testifying about the relevant time period, Plaintiff's testimony was sometimes uncertain, indicating that his memory of his condition at that time was imprecise, particularly as compared to his memory of his present condition.[11]

Moreover, much of the testimony that referred to the relevant time period was offered in response to prompting from counsel instead of spontaneously. For example, Plaintiff's counsel specifically reminded Plaintiff that "we've got to focus your testimony to before June 30th, 2006." (AR 52.) In addition, Plaintiff's counsel asked Ms. McKinstry to confirm whether her testimony described what was "going on before June 30th, 2006," to which Ms. McKinstry answered in the affirmative. (AR 58.) Likewise, Plaintiff initially testified in the past tense when answering a question from his attorney specifically directing him to focus on the relevant time, but then he switched to using the present tense in continuing to describe his limitations. Prompted testimony may be

---

that."); AR 42 ("We still have a boat, but my children have to help it out in the water for me. So, I can't do it myself."); AR 49 ("I can't really carry or lift anything."); AR 53 ("I can't just sit in an area for two hours or an hour . . . it's too much sitting time for me.").

[9] See, e.g., AR 204 ("I don't do that much . . . because I have trouble sleeping due to back pain"); AR 207 ("I can't do some household and yard work").

[10] See, e.g., AR 56-57 ("We can't do just walks down the road . . . We used to go biking. We can't bike because it hurts his back . . . We did walk a while. He could walk longer. And now . . ., he walks even less due to back pain and shortness of breath."); AR 57 ("Dave loves to go to movies. We attempted to go to a movie just recently [and] he had to get up a couple of times[.] And he does leave the movies a couple of times, throughout. We can't really go to the movies."); AR 58 ("He can't even drive me to work anymore[.] And he used to do it for me."); AR 58 ("[H]e used to do the vacuuming . . . he kept the house up. He used to do the laundry and everything. He can't carry the basket of clothes up the stairs.").

[11] See, e.g., AR 48 ("I think probably [before June 2006] I'd still be laying down on the floor quite a bit. But I think it got worse as we were going, as this progressed[.]").

12

subject to an adverse credibility inference. *See Carpet Serv. Int'l, Inc. v. Chicago Reg'l Council*, 2011 WL 3838740, at *3 (N.D. Ill. Aug. 30, 2011) ("The credibility and reliability of plaintiffs' witnesses' testimony was also significantly undermined by plaintiffs' counsel's leading questions in the direct examination of those witnesses on contested substantive issues."); *Burgos v. Astrue*, 2011 WL 1642734, at *11 (S.D.N.Y. Apr. 29, 2011) (finding claimant's testimony about back pain not credible "because [claimant] herself did not mention back pain at the hearing until she was prompted by counsel.").

Based on the foregoing, the court concludes that substantial evidence supports the finding by the ALJ that testimony about Plaintiff's limitations was primarily based on Plaintiff's present condition rather than his condition during the relevant time period. The court thus ADOPTS the Magistrate Judge's conclusions as to this issue.

### D. Whether the ALJ Erred in Noting That Plaintiff Worked in Real Estate During the Relevant Period.

The Magistrate Judge found that the ALJ did not err in noting that Plaintiff engaged in some work as a realtor during the relevant period. Plaintiff objects to this conclusion because Plaintiff's earnings records indicate that he was not engaged in substantial gainful activity from 2005 through 2007 and because he testified that he was not physically able to do the work during the relevant period.

The ALJ found that Plaintiff "continued to engage in and hold himself out as working in real estate" during the relevant time period. (AR 21.) This statement was not inaccurate.[12] Moreover, even though Plaintiff's real estate work was not substantial gainful activity, evidence of limited work is properly considered. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Thus, the ALJ did not commit error.

---

[12] *See* AR 754 (a treatment note in May 2005 stating that Plaintiff "continues to work as a realtor."); AR 282 (a note from a physical therapist in February 2006 stating that Plaintiff "works in real estate[.]"); AR 272 (another note from a physical therapist in November 2006 stating that Plaintiff "is a realtor.").

13

For the foregoing reasons, the court ADOPTS the Magistrate Judge's conclusion that the ALJ did not err in considering Plaintiff's real estate work during the relevant period.

## CONCLUSION

For the reasons stated above, the court hereby ADOPTS in part the Magistrate Judge's R & R (Doc. 17). The court DENIES Plaintiff's motion to reverse and remand (Doc. 4) and GRANTS the Commissioner's motion to affirm (Doc. 8).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 23rd day of February, 2012.

Christina Reiss, Chief Judge
United States District Court